**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EMOJI COMPANY GmbH, | |
| Plaintiff, | |
| v. | Case No. 23-cv-15917 |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, | Judge Robert W. Gettleman |
| Defendants. | |

## PLAINTIFF'S RESPONSE TO THE MOTION TO DISMISS AND VACATE THE PRELIMINARY INJUNCTION BY DEFENDANT NO. 185 "PIMOXV"

Plaintiff, EMOJI COMPANY GmbH, ("Plaintiff" or "EMOJI"), responds to the Motion to Dismiss and Vacate the Preliminary Injunctiton ("Motion") by Defendant No. 185 "PIMOXV" ("Defendant") and states as follows:

### I.  INTRODUCTION

Defendant's Motion should be denied because Defendant is unable to demonstrate that this Court lacks jurisdiction, that the EMOJI mark is generic or that Plaintiff is unlikely to succeed on its claims.

Defendant erroneously claims that Plaintiff fails to establish personal jurisdiction over Defendant despite Defendant reaching out to Illinois residents by affirmatively authorizing sales to United States consumers and then offering for sale and agreeing to ship infringing counterfeit EMOJI products to Illinois.

Defendant also erroneously alleges that Plaintiff is unlikely to succeed on its claims for trademark infringement while ignoring Plaintiff's registered trademarks, the strength of the EMOJI brand and the fact Defendant is not authorized to use the EMOJI marks.

Defendant seeks to evade the consequences for infringing Plaintiff's registered EMOJI Trademarks for the offer of sale of products to Illinois residents through Defendant's e-commence store on the Walmart.com, Inc. platform. As a result, Defendant's Motion should be denied.

## II. STATEMENT OF FACTS

On December 7, 2022, Plaintiff filed a Complaint against Defendant for counterfeiting and trademark infringement of its EMOJI Trademarks, false designation of origin and violation of the Illinois Uniform Deceptive Trade Practices Act in Case No. 22-cv-6862. [Dkt. No. 1]. Defendant was listed as Defendant No. 178 in the 22-cv-6862 matter. On August 25, 2023, the Court issued a Rule to Show Cause against Plaintiff regarding improper joinder. On September 5, 2023, the Court granted Plaintiff leave to file an Amended Complaint. [Dkt. No. 36]. Plaintiff filed an Amended Complaint [Dkt. No. 37] and Amended Schedule A [Dkt. No. 38] on September 7, 2023, which excluded Defendant No. 178 "PIMOXV", thereby dismissing Defendant from the 22-cv-6862 case.

On November 14, 2023, Plaintiff filed a Complaint against Defendant for counterfeiting and trademark infringement of its EMOJI Trademarks, false designation of origin and violation of the Illinois Uniform Deceptive Trade Practices Act in the present case. [Dkt. No. 1]. On November 14, 2023, Plaintiff filed a Motion for an *Ex Parte* Entry of a Temporary Restraining Order ("TRO") and Supporting Memorandum [Dkt. Nos. 10, 11] which was granted the following day. [Dkt. Nos. 21, 22].

On December 8, 2023, Plaintiff filed a Motion for Entry of a Preliminary Injunction and supporting Memorandum [Dkt. Nos. 27, 28] and effectuated service of process on defendants in this matter. [Dkt. No. 30]. This Court granted Plaintiff's Motion for Entry of a Preliminary Injunction on December 12, 2023. [Dkt. Nos. 32, 33].

On December 16, 2023, an attorney purporting to represent Defendant contacted Plaintiff's counsel in an effort to resolve this matter. On December 25, 2023, Defendant filed a pro se Motion to Dismiss and Vacate the Preliminary Injunction. [Dkt. No. 38]. 58].

### III. ARGUMENT

A. <u>A Non-Lawyer Pro Se Defendant Cannot Represent a Business Entity</u>

On December 25, 2023, Defendant No. 185 "PIMOXV" filed the present Motion. [Dkt. No. 38]. In the first paragraph of the Motion, Defendant identifies themselves as the individual operating thee-commerce store "PIMOXV, which is listed as Defendant No. 185 in the Schedule A associated with Plaintiff's lawsuit. Defendant does not claim to be an attorney, nor is Defendant listed as an attorney licensed to practice in the State of Illinois. As an entity, Defendant No. 185 "PIMOXV" cannot represent itself, nor can a non-lawyer represent Defendant No. 185 "PIMOXV".

It also appears that Defendant's Motion was ghost-written by a U.S. practicing attorney as the Motion cites several U.S. opinions and cites those opinions in an appropriate matter. Additionally, Defendant's Motion is written in a format that is common among pleadings filed in the United States.

As such, Defendant's Motion should be denied as not properly presented before this Court by a licensed attorney authorized to represent a business entity.

3

B. Personal Jurisdiction is Proper Since Defendant Targeted and Reached Out to Do Business with Illinois Residents

1. Legal Authority Regarding Personal Jurisdiction

Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See Curry v. Revolution Labs., LLC,* 949 F.3d 385, 392-93 (7th Cir. 2020); *Avocent Huntsville Corp. v. Aten Int'l Co.,* 552 F.3d 1324, 1329 (Fed. Cir. 2008).

In *Illinois v. Hemi Grp. LLC,* the Seventh Circuit explained that "Hemi stood ready and willing to do business with Illinois residents." 622 F.3d 754, 757-58 (7th Cir. 2009). "It is Hemi reaching out to residents of Illinois, and not the residents reaching back, that creates the sufficient minimum contacts with Illinois that justify exercising personal jurisdiction over Hemi in Illinois." *Id*. at 758. As such, specific jurisdiction is proper where a company "h[olds] itself out as open to do business with every state" and is "ready and willing to do business with [that state's] residents." *Id*.

Following *Hemi*, the Seventh Circuit in *Curry v. Revolution Labs., LLC* recently determined that personal jurisdiction was proper over non-resident e-commerce store operators:

> We are satisfied that Revolution has formed sufficient minimum contacts with Illinois. Like Hemi, Revolution sells its products only online through its website and third-party websites. Revolution's interactive website for the sale of its products requires the customer to select a shipping address. Illinois is among the "ship-to" options from which the customer must choose. Illinois residents purchasing Revolution's products also receive an email from Revolution thanking them for their business, confirming their order, and listing the Illinois shipping address.

4

949 F.3d at 399. Under this precedent, Illinois courts have consistently exercised personal jurisdiction over non-resident e-commerce store operators. *See, e.g., e.g., Mori Lee v. Partnerships*, No. 19-cv-7555 (N.D. Ill. May 14, 2020) (Docket No. 60) (Kennelly, J.); *Volkswagen AG v. iman365-usa,* No. 18-cv-06611, 2020 U.S. Dist. LEXIS 34218, at *11 (N.D. Ill. Feb. 28, 2020); *Monster Energy Company v. Chen Wensheng, et al.*, 136 F. Supp. 3d 897,909 (N.D. Ill. 2015) (same); *Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (same); *see also*, *Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, 2010 WL 4877708, at *7 (N.D. Ill. Nov. 23, 2010) ("As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may exercise personal jurisdiction over Defendant.").

2. Defendant's Intentional Actions Targeted Illinois

Defendant "stood ready and willing to do business with Illinois residents" by creating and operating its interactive E-commerce Store through which Infringing Products could be purchased. *Hemi Grp*, 622 F.3d at 758; *Curry,* 949 F.3d at 399. Illinois residents purchasing Defendant's products are shown a webpage. *See Curry*, 949 F.3d at 399. Defendant's reaching out and expressly electing to do business with the residents of all fifty states, including Illinois, the fifth most populous state, establishes personal jurisdiction. *Hemi Grp*, 622 F.3d at 758; *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010).

It is undisputed that Defendant advertised and offer to ship the Infringing Product to Illinois. Additionally, Defendant's E-Commerce Store also establishes that Defendant was ready and willing to ship Infringing Products to the United States, including Illinois. Courts in this district have regularly found jurisdiction over China-based e-commerce stores based solely on a single offer for sale of infringing product. *See, Monster Energy Co.*, 136 F. Supp. 3d at 909

5

("defendants' offers to sell counterfeit Monster Energy Products on their Internet stores constitute tortious activity committed in Illinois sufficient to establish personal jurisdiction"); *Christian Dior Couture, S.A.*, 2015 U.S. Dist. LEXIS 158225 at *6 (same).

Defendant has established and operated a commercial, interactive online store through which U.S. customers could purchase its products, thus holding itself out as open to do business with every state, including Illinois. *See Volkswagen AG,* 2020 U.S. Dist. LEXIS 34218, at *9 (*citing Hemi Grp. LLC*, 622 F.3d at 758) (online purchases were not unilateral actions by customers—which generally would not satisfy the "minimum contact" requirement—where the defendant operated a commercial website open to business with the forum state); *see also*, *Valtech, LLC v. 18th Ave. Toys Ltd.,* 2015 U.S. Dist. LEXIS 17138, at *12 (N.D. Ill. Feb. 12, 2015).

As such, Defendant's offer for sale of infringing products constitutes jurisdiction of this Court over this matter.

C. Entry of a Preliminary Injunction Against Defendant is Appropriate

Plaintiff has satisfied all of the elements required for the entry of a preliminary injunction against Defendant. A preliminary injunction may be issued upon a showing that: "(1) there is a reasonable likelihood that Plaintiff will succeed on the merits; (2) Plaintiff will suffer irreparable injury if the order is not granted because there is no adequate remedy at law; (3) the balance of hardships tips in Plaintiffs' favor; and (4) the public interest will not be disserved by the injunction." *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1076 (N.D. Ill. 1996).

1. Plaintiff is Likely to Succeed on the Merits of its Claims

Plaintiff is likely to succeed on the merits of its claims because Defendant is infringing

Plaintiff's valid trademarks. Plaintiff is the owner of U.S. Trademark Registration Nos. 4,868,832, 5,202,078 and 5,415,510 for the EMOJI mark. *See* Exhibit B, ¶ 5- Decl. of Jose Santiago. Defendant does not have a licensing agreement with Plaintiff to use its marks, nor has it been otherwise authorized to do so.

The conduct and infringing use by Defendant constitutes trademark infringement in violation of §43(a) of the Lanham Act (15 U.S.C. §1125(a)) and §32 of the Lanham Act (15 U.S.C. §1114), which prohibits the use in commerce of rendering any services of any word, name, symbol or device, or any combination thereof, in connection with the sale of goods that is likely to cause confusion, mistake, or deceive the source of those goods or services. As illustrated in Exhibit A, Defendant's intentional infringement of Plaintiff's EMOJI marks has caused injury to Plaintiff's business, reputation and goodwill and is causing confusion in the marketplace. As a result, Plaintiff is likely to succeed on the merits of its claims and the entry of a Preliminary Injunction is appropriate.

    a.  <u>Defendant's Claims that "EMOJI" is a Generic Term Is Without Merit</u>

Defendant's claims that "EMOJI" is a generic term is unsupported and is without merit. In fact, the term "EMOJI" is anything but generic. EMOJI COMPANY GmbH is a well-established company with a significant intellectual property portfolio, through which the licensing efforts of its "EMOJI" mark has enabled it to become a global brand with developed markets in North America, Europe, Brazil, Mexico, China and Australia and rapidly expanding in Southeast Asia. *See* Exhibit C-Declaration of Marco Huesges, at ¶ 3.

EMOJI COMPANY GmbH currently owns about 1,000 trademark registrations and applications in over 100 countries, including the United States for the EMOJI trademark (the "EMOJI mark"), as both a word mark and in conjunction with other words or design elements

for more than 25 categories of goods and services. (*Id.* at ¶ 4). Plaintiff is the registered owner of U.S. Registration Nos. 4,766,492; 4,893,876; 4,595,110; 5,202,078; 4,868,832 and 5,073,890 for the EMOJI mark and Registration Nos. 5,225,956 and 5,127,348 for "the Emojis" mark.

The EMOJI mark has been examined hundreds of times by relevant Trademark Offices worldwide; and, in each country, the EMOJI mark has been found to be distinctive and registrable. (*Id.* at ¶ 5). EMOJI's trademarks are registered on the Principal Register and, under Section 7(b) of the Lanham Act. (*Id.* at ¶ 5). Those registrations constitute prima facie evidence of: (a) the validity of the registered mark and of the registration, (b) Plaintiff's ownership of the mark and (c) Plaintiff's exclusive right to use the mark in commerce with regard to the goods concerned. (*Id.* at ¶ 5).

Plaintiff has developed the world´s largest library of protected emoji® brand icons and designs for licensing of any kind. (*Id.* at ¶ 4). Plaintiff licenses its marks to third parties pursuant to formal license agreements, through more than 19 license agencies and more than 950 licensees. (*Id.* at ¶ 6). Plaintiff has been licensing its EMOJI Trademark through an international network of agents and dealers in the U.S. and more than 100 other countries since at least 2015. (*Id.* at ¶ 6). Plaintiff has licensing agreements with numerous companies including Sony Pictures Animation Inc. ("SPA") ("The Emoji Movie"), Walmart, Costco, Nestle, Pepsico, Burger King, Nikon, Fuji, Random House, Aldi, Ferrero, Unilever, Zara, Danone, Chevrolet, The Hershey Company, Puma and Kellogg's, among others, concerning use of the EMOJI Trademark. (*Id.* at ¶ 6). This network of licensed users has resulted in retail sales of EMOJI branded products exceeding $800 million annually and more than $2.5 billion total from license revenue from sales of EMOJI-branded products. (*Id.* at ¶ 6).

Plaintiff also has licensing partnerships concerning use of its EMOJI mark with other leading firms including ACCO Brands (calendars), Alcove Brands (health and vitamins), ASO (first aid products), Bendon (publishing), Bentex Group (children's apparel) Centric Brands (sleepwear), DanDee International (seasonal and non-seasonal toys, collectibles, home décor, pet and baby products), David's Textiles (fabric), Decopac (cake decorating), Fabpops (mobile phone accessories), Gotta Love It (apparel), Handcraft Manufacturing Corp. (children´s clothing ), Isaac Morris, LTD (apparel); Jay Franco (domestic products), Paramount Brands (fragrances), RedBubble (fan art/e-commerce); Running Press (publishing), Strikeforce Bowling (bowling), Success Promotions (promotional products and emoji "Attitude" bobble.), Trends International, LLC (posters and stickers), Unique (partyware), Unitrex SpaRoom (automotive air fresheners), World Tech Toys (toys) and ZAK! Design (dinnerware, drinkware and food storage). (*Id.* at ⁋ 7).

Plaintiff was ranked No. 57 out of the top 150 global licensors in the trade journal *License Global* and was ranked No. 3 of the most influential brands by the 2017 *Power List* on licensing.biz behind Lego® and Coca-Cola®. (*Id.* at ⁋ 9). Plaintiff has received numerous awards and accolades for its licensing of the EMOJI mark and in 2018, received the Lima Award for Best Digital Program in the United States. (*Id.* at ⁋ 10). Plaintiff was also nominated for Best Brand digital property 2019 (Licensing International) and for the Lima Award for Best Digital Property in the United States in 2018. (*Id.* at ⁋ 10).

Plaintiff has invested millions into brand building, content creation and brand protection. (*Id.* at ⁋ 11). Plaintiff displays the EMOJI marks extensively on its products and in its marketing and promotional efforts which include, but are not limited to, substantial print media, a website, social media sites and point of sale materials. (*Id.* at ⁋ 11). Plaintiff has

Emoji® mono-brand apparel stores in China including the official Emoji® brand store on TMall, which is a Chinese language website with over 500 million monthly active users for business-to-consumer online retail sales and developing brand awareness. (*Id.* at ⁋ 8). Plaintiff also has Emoji® brand tea cafes in China, which introduce Chinese consumers to the Emoji® brand. (*Id.* at ⁋ 8). As such, Defendants' claims regarding the genericness of "EMOJI" are without merit and should be disregarded.

### b. Fair Use and Descriptive Use Do Not Apply

Defendant erroneously claims that its use of the term "EMOJI" does not constitute trademark infringement. "A trademark includes: any word, name, symbol, or device, or any combination thereof [used by any person] to identify and distinguish his or her goods, including a unique product, from those manufactured and sold by others and to indicate the source of the goods, even if that source is unknown." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Furthermore, "The Act provides that: a mark registered on the principal register ... shall be prima facie evidence of the validity of the registered mark ... and of the registrant's exclusive right to use the mark in commerce on or in connection with the goods or services specified in the registration…" *Id.* at 628. "Hence, although a term's "primary" meaning is merely descriptive, if through use the public has come to identify the term with a plaintiff's product or service, the words have acquired a "secondary meaning" and would become a protectible trademark. In other words, 'secondary meaning' denotes an association in the mind of the consumer between the trade dress [or name] of a product and a particular producer." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1085 (7th Cir. 1988).

In the present case, Plaintiff's EMOJI mark has acquired secondary meaning "i.e. has become distinctive of the plaintiff's goods and/or services." *Id.* at 1085. Plaintiff has expended

substantial time, money and other resources developing, advertising and otherwise promoting the EMOJI Trademarks. *Santiago Decl.* ⁋ 8. As a result, products associated with the EMOJI Trademarks are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from EMOJI COMPANY GmbH. *Id.* Defendant could have used many other terms instead of the word "EMOJI" to describe a smiley face on the products for sale on its website but chose not to do so because it would have forfeited the increased web traffic that the EMOJI name brings. As a result, Defendant's claim of fair use and descriptive use fail.

c.  <u>Defendant's Use of the EMOJI marks was Not in Good Faith</u>

Defendant's use of the EMOJI marks was not in good faith and caused confusion in the marketplace as to the source of origin of the products being sold. "[T]he inquiry into the defendant's good faith concerns the question whether the user of a mark intended to create consumer confusion as to source or sponsorship." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 401 (2d Cir. 2009). When analyzing whether Defendant's use of a term has caused confusion in the marketplace, "confusion" means whether "consumers [have been] misled into believing that the two [products] came from the same source" *Id.* at 400.

In the present case, Defendant's use of the EMOJI marks has led the public to believe the products were either manufactured by Plaintiff, or to their specifications. Plaintiff is irreparably harmed by the unauthorized use of the EMOJI marks because counterfeiters take away Plaintiff's ability to control the nature and quality of products used with their trademarks. *See* Exhibit B ⁋ 12, Decl. of Jose Santiago.

The sale of counterfeit products using the EMOIJ marks causes consumer confusion in the marketplace, which weakens Plaintiff's brand recognition and reputation. *Id*. When counterfeit products use Plaintiff's Trademarks, their products and brand become associated with

these inferior counterfeit products, resulting in increased skepticism and hesitance to purchase EMOJI product, thus undermining the EMOJI COMPANY GmbH's reputation and goodwill. *Id.* at ₱ 12.

Most consumers are unable to distinguish fake EMOJI Products from those produced by Plaintiff or their licensed partners by simply reviewing their outer appearance and often regard counterfeit products as being "bargains" because of their low price. The resulting loss of sales and damage to the EMOJI brand is unquantifiable. *Id.* at ₱ 13.

The Defendant's use the EMOJI marks to capitalize off Plaintiff's goodwill and reputation to sell counterfeit products in the marketplace should be prevented and can be by denying Defendant's Motion to vacate the Preliminary Injunction.

d.  <u>Defendant Does Not Have a License to Sell EMOJI-Branded Products</u>

Defendant does not have a license to market and sell EMOJI-branded products. *See* Exhibit C, ₱ 16, Decl. of M. Huesges. Plaintiff licenses its products to a select group of companies based upon agreed standards for production and quality, and Plaintiff closely monitors the efforts of its licensees. (*Id* at ₱ 15). EMOJI COMPANY GmbH is very selective with regard to whom they license because those licensing partners are required to manufacture the products to meet EMOJI's specifications and standards. (*Id.* at ₱ 16).

2.  <u>In the Absence of a Preliminary Injunction, Plaintiff Will Suffer Irreparable Harm</u>

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of*

*Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988); *see also 4 Callmann on Unfair Competition, Trademark and Monopolies* § 88.3(b) at 205 (3d ed. 1970). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendant's unauthorized use of the EMOJI Trademarks has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Santiago Declaration at ¶¶ 11-13.

The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendant's infringing activities through injunctive relief. *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages.").

In the present case, Defendant has clearly infringed Plaintiff's registered trademarks in its efforts to cause confusion in the marketplace. As such, Plaintiff will suffer irreparable injury if the preliminary injunction is vacated. Therefore, Defendant's Motion should be denied.

3.  <u>The Balancing of Harms Tips in Plaintiff's Favor</u>

When balancing the harm against both parties, Plaintiff is most likely to suffer more in the absence of the entry of a preliminary injunction against Defendant. As willful infringers, Defendant is entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendant has been profiting from the sale of Counterfeit EMOJI Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that a Preliminary Injunction be entered against Defendant.

4.  <u>Issuance of the Injunction Is in the Public Interest</u>

Entry of a Preliminary Injunction is in the public interest because it will prevent consumer confusion and stop Defendant from violating federal trademark law. The public is currently under the false impression that Defendant is operating their Defendant's Internet Stores with Plaintiff's approval and endorsement. A preliminary injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the

14

public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendant's actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendant, or as to the identity of the owner of trademarks used in connection with those goods and services. Unless Defendant's unauthorized use of the EMOJI Trademarks are enjoined, the public will continue to be confused and misled by Defendant's conduct.

For these reasons, Plaintiff respectfully requests this Court to deny Defendant's Motion.

## IV. CONCLUSION

In conclusion, for the reasons stated above, Defendant's Motion to Dismiss the Complaint and Vacate the Preliminary Injunction should be denied. The Preliminary Injunction that was properly entered on December 12, 2023 [Dkt. Nos. 32, 33] should remain in place to prevent Defendant from further harming Plaintiff. This Court should also deny Defendant's Motion to Dismiss as this Court has jurisdiction over Defendant.

Respectfully submitted,

Dated:  January 5, 2024

By:      s/Michael A. Hierl
         Michael A. Hierl (Bar No. 3128021)
         William B. Kalbac (Bar No. 6301771)
         Robert P. McMurray (Bar No. 6324332)
         Hughes Socol Piers Resnick & Dym, Ltd.
         Three First National Plaza
         70 W. Madison Street, Suite 4000
         Chicago, Illinois 60602
         (312) 580-0100 Telephone
         mhierl@hsplegal.com
         wkalbac@hsplegal.com
         Attorneys for Plaintiff
         EMOJI COMPANY GmbH

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies on January 5, 2024, that a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system.

/s/ *Michael A. Hierl*