IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMOJI COMPANY GMBH ) | |
| Plaintiffs, ) | Case No. 23-CV-15917 |
| v. ) | Hon. J. Gettleman |
| V. THE INDIVIDUALS, CORPORATIONS, ) LIMITED LIABILITY COMPANIES, ) PARTNERSHIPS, AND ) UNINCORPORATED ASSOCIATIONS ) IDENTIFIED ON SCHEDULE A HERETO ) | |
| Defendants. ) | |

**MOTION FOR SANCTIONS AGAINST PLAINTIFF EMOJI COMPANY GMBH AND MOTION TO FIND CASE EXCEPTIONAL UNDER 15 U.S.C. § 1117**

Defendant The Tee Expert appears before this Court to bring attention to a disturbing pattern of fraudulent conduct being committed by the Plaintiff and its attorneys on this Court and this district. Plaintiff Emoji Company GMBH ("Plaintiff" or "The Emoji Company") and its attorneys ignored the the Rules Civil Procedure, this Court's rules, the Illinois Rules of Professional Conduct, and federal law to extort online US sellers. Plaintiff abused the judicial system by obtaining Temporary Restraining Orders through false or reckless representations that they conducted a proper investigation to determine that the defendants listed in Schedule A were all coordinated counterfeiters working together to sell counterfeit goods. The Plaintiff argued that an injunction prior to any judgment in this matter was necessary because the defendants all had foreign accounts and thus would their money to overseas jurisdictions if sued traditionally. This Court, relying on the Plaintiff's and its attorneys' sworn declarations under penalty of perjury, granted a secret *ex parte* TRO and preliminary injunction against The Tee Expert and all other defendants involved.

1

Based on Plaintiff's false representations that Defendant Tee Expert and the other defendants were all foreign online sellers, without exception, the Plaintiff obtained the ability to serve via email and website publication. On December 11, 2024, Plaintiff's attorneys filed a certificate of service claiming they provided service to the defendants. [30].

However, The Tee Expert was never served with notice of this lawsuit. After Tee Expert learned about this lawsuit through its own investigation and contacted the Plaintiff on its own means, Plaintiff's attorneys refused to respond to the Tee Expert or its attorneys. Consequently, The Tee Expert was compelled to retain local counsel in this district to make an appearance in this Court to oppose Plaintiff's injunction. A diligent review of the allegations in Plaintiff's Complaint, the TRO, and the preliminary injunction (and numerous other cases filed by Emoji) reveals that Plaintiff's attorneys and representatives either recklessly or knowingly submitted materially false statements in their sworn declarations. The declarations are filled with blanket and conclusory statements that are used in every Emoji lawsuit and are devoid of any factual or legal basis for their claims.

Filing without proper investigation of its claims about its defendants appears to be a habit for the Plaintiff and its attorneys based on a review of filings for the Emoji Company. On January 11, 2024, the Plaintiff voluntarily dismissed ten cases it filed to hide this matter from being brought before the Court. Because of the Plaintiff's evasive actions and its attorneys frequent filing of anti-counterfeiting claims, strong sanctions are warranted to deter this reckless behavior in other cases. To do otherwise would compromise the Court's integrity and reputation, fail to adequately compensate The Tee Expert for the damages incurred, and embolden other trademark plaintiffs to adopt similarly unacceptable tactics.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

1. This case arises from a series of anti-counterfeiting actions typically brought in this district against foreign and online sellers, which utilize temporary restraining orders and preliminary injunctions to freeze online seller accounts. Defendant Tee Expert files this motion to contest the jurisdictional claims made in Plaintiff's filings and to seek compensatory damages for the false statements exploited to secure an overreaching and improper injunction.

2. Plaintiff filed its Complaint on November 14, 2023, alleging that The Tee Expert committed trademark infringement, false designation of origin, and violated the Illinois Uniform Deceptive Trade Practices Act. Following this, on November 15, 2023, Plaintiff swiftly filed an *ex parte* Motion for a Temporary Restraining Order [10], which was granted on the same day. [21]. Subsequently, on December 8, 2023, Plaintiff submitted a Motion for Preliminary Injunction, which this Court approved on December 12, 2023.

3. In obtaining its injunctions, the Plaintiff and its representatives informed the court:

   i. a proper investigation into the affiliation and nature of the defendants was conducted;
   ii. the defendants were all online foreign sellers with foreign bank accounts; and
   iii. the defendants' locations could not be reasonably found.

Memo. of Law in Supp. of TRO. [11 at 6-9].

4. Defendant Tee Expert is a Tennessee company that does not have any connections or ties to foreign entities or jurisdictions and conducts its online business primarily within the State of Tennessee. Talbert Decl. ("Exhibit 1") at ¶¶1-9.

5. Upon information and belief, the Plaintiff Emoji Company GMBH is a German company with no ties to the United States or any known physical offices or managers/employees

3

in the State of Illinois.

6. This matter involves one solitary transaction from Tee Expert to establish jurisdiction in Illinois. Ex. 1 at 10.

7. Tee Expert made total of $52.97 in gross sales from the allegedly infringing product. Ex. 1 at 10.

8. Upon learning of the wrongful restraint on its online seller account, counsel for The Tee Expert reached out to Plaintiff on December 29, 2023.

9. The Plaintiff strategically timed lawsuit, occurring during the lucrative 2023 holiday season, and hindered Tee Expert's ability to do business.

10. Despite repeated communications underscoring the financial distress caused by Plaintiff's wrongful injunction, Plaintiff remained unresponsive to all correspondence and phone calls. Ex. 1 at ¶¶ 11-12.

11. On January 5, 2024, counsel for Tee Expert was required to file an appearance. Instead of engaging in settlement discussions with Defendant Tee Expert's counsel, Plaintiff voluntarily dismissed all Defendants from the suit on January 11, 2024, neglecting to redress the damages inflicted by its baseless statements. *Id.*

12. Plaintiff Emoji company and its attorneys voluntarily dismissed at least ten other lawsuits alleging the same claims on January 11, 2024. Exhibit 2.

13. Plaintiff's unfounded accusations were instrumental in wrongly associating Defendant Tee Expert, along with various other online sellers, as co-defendants in this case and at least ten other cases in this district.

**ARGUMENT**

As the foregoing discussion of the facts demonstrates, Plaintiff and its attorneys filed a

frivolous complaint by either recklessly or knowingly including false statements of fact and baseless factual allegations in violation of Federal Rule of Civil Procedure 11. Plaintiff and its attorneys filed an equally frivolous motion for an *ex parte* TRO supported by knowingly false sworn declarations under penalty of perjury, violating Federal Rules of Civil Procedure 11 and 65(b)(1), Illinois Rules of Professional Conduct 3.1, 3.3(a), and 3.3(d), and 18 U.S.C. § 1621(2). At a minimum, the appropriate sanction for this misconduct is an award of attorney fees and costs incurred by Defendant Tee Expert against both Plaintiff and Plaintiff's attorneys, and an investigation into the other filings of Plaintiff and its attorneys.

**I.       The Plaintiff's False Statements to Obtain Jurisdiction and an *Ex Parte* Injunction is Sanctionable Conduct.**

Plaintiff should be sanctioned and required to pay monetary fines and attorney's fees for its false statements to manufacture jurisdiction in this Court and to obtain an injunction. When a plaintiff obtains a TRO based on fraudulent misrepresentations and filings that violate Rule 11, this Court has the inherent power to sanction parties and counsel by requiring them to pay monetary fines, costs to defendants, and attorney fees and costs.

This is not a matter of first impression. Courts in this district have found that misrepresentations in anti-counterfeiting cases to obtain jurisdiction or an *ex parte* restraining order are sanctionable conduct warranting attorney's fees. *See Xped LLC v. Entities Listed on Ex. 1*, 2023 WL 5748350 at *17, No. 21 CV 6237 (N.D. Ill. Sep. 6, 2023) ("*XPed*"). Like this matter, *Xped* is a Schedule A anti-counterfeiting case that was brought in this court. The plaintiff in *Xped* also obtained a TRO/preliminary injunction to freeze online merchant accounts by falsely claiming that the defendants were "foreign companies with no meaningful ties to the United States." *Id.* at *12. Despite being made personally aware of this false statement, the *Xped* plaintiff failed to correct its representations to the Court and continued its false prosecution on the basis that the

large number of defendants it sued warranted less diligence in verifying its claims. *Id.* ("[Plaintiff's Attorney] and those who reported to him failed to conduct a reasonable investigation that would have revealed the clear evidence of Defendant's U.S. presence."). The court found that the Plaintiff and its attorney's failure to conduct a proper investigation was sanctionable conduct that was punishable under this its inherent power. *Id.* at *13.

Here, an award of attorney fees awarded under the Court's inherent power to impose sanctions is an appropriate sanction for a Rule 11 violation committed during requests for preliminary relief, because the nature of preliminary relief proceedings prevents strict compliance with Rule 11(c)(1)'s safe harbor provision. In *Methode Electronics, Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 924 (7th Cir. 2004), the plaintiff filed a complaint in this Court with a request for a TRO alleging that venue was proper in the Northern District of Illinois. The defendant sought sanctions because venue was improper in Illinois, and the case should have been brought in New Jersey. *Id.* The District Court sanctioned the plaintiff and awarded attorney fees for the plaintiff's deceptive allegations in an attempt to obtain venue. *Id.* at 925. On appeal, the Seventh Circuit affirmed the sanctions despite the failure to strictly comply with the 21-day safe harbor provision of Rule 11, explaining that "[a]s in many cases involving a request for preliminary relief, blind adherence to the procedures in Rule 11 is not possible." *Id.* at 927. Accordingly, it was proper for the court to sanction the plaintiff for its deceptive venue allegations under its inherent power, even though the safe harbor provision of Rule 11 had not been followed. *Id.* at 928; *F&G Scrolling Mouse, L.L.C. v. Microsoft, Inc.*, 56 F. Supp. 2d 1005, 1007 (N.D. Ill. 1999) (noting that a plaintiff's choice of the Northern District of Illinois as its forum is not entitled to any deference where the plaintiff has no ties to this District).

Like *Xped* and *Methode*, Plaintiff's Plaintiff's knowingly false or reckless

6

misrepresentations were used to obtain jurisdiction for a foreign plaintiff and were used to wrongfully restrain the accounts of US sellers. Plaintiff's complaint falsely claims that Tee Expert and the other Defendants are all coordinated counterfeiters with overseas accounts and will move money if the accounts are not restrained.

These assertions are patently untrue in relation to Defendant Tee Expert and were made without any substantiative investigation. Defendant Tee Expert is not engaged in counterfeiting, nor has it designed its online store or utilized SEO strategies or misleading names to generate sales or capitalize on Plaintiff's trademarks. The store's proprietor maintains no personal or business affiliations with any foreign entities.

The injunction levied against Defendant Tee Expert was procured through false and irresponsible statements and do not constitute a proper application of injunctive relief for a defendant operating within the United States. As a bona fide Tennessee business running an online sales account on a third-party website, Defendant Tee Expert's sales of two disputed products resulted in a trivial amount of $52.97. The baseless assertions and sweeping actions by Plaintiff have unjustly obstructed Tee Expert's ability to conduct its business operations.

Plaintiff violated Rule 11(b)(3) by representing to the Court that The Tee Expert was a foreign counterfeiter with offshore bank accounts to manufacture jurisdiction in this venue. As a sanction, the Plaintiff should be ordered to pay The Tee Expert its attorney's fees and costs. Because the Plaintiff dismissed this suit, the Tee Expert is presumably a prevailing party and should be entitled to all its attorney fees as an exceptional case under the Lanham Act. 15 U.S.C. § 1117(a).

**II.     The Court should Order an Audit the Plaintiff and Its Other Schedule A Cases to Determine What Methods Were Used to Verify Its Claims and Issue an Appropriate Sanction to Deter the Behavior in Future Cases.**

The Plaintiff's actions in this case and at least ten other cases that were all dismissed on January 11, 2024, indicate a disturbing pattern and lack of due diligence by the Plaintiff. When a plaintiff materially false misrepresentations to the Court in order to obtain a TRO, as Plaintiff and its attorneys have done here, dismissal of the underlying complaint with prejudice is the appropriate sanction to punish the plaintiff for the harm done to the legal system. *See Ridge Chrysler Jeep, LLC v. Daimler Chrysler Servs. N. Am.*, No. 03 C 760, 2006 WL 2808158, at 9-10 (N.D. Ill. Sept. 6, 2006).

However, given the Plaintiff's status as a frequent filer of anti-counterfeiting claims and its dismissal of this matter to evade consequences, stronger sanctions are warranted. Normally, lesser sanctions like an admonishment or dismissal should be considered. The Seventh Circuit has explained that "[p]erjury committed in the course of legal proceedings is a fraud on the court, and it is arguable that a litigant who defrauds the court should not be permitted to continue to press his case." *Allen v. Chi. Trans. Auth.*, 317 F.3d 696, 703 (7th Cir. 2003). However, an admonishment or even dismissal of this action is not an adequate remedy because the Plaintiff is a frequent filer of anti-counterfeiting claims.

To avoid sanctions or any other penalty, the Plaintiff voluntarily dismissed this case and at least ten other cases to presumably conceal its mistake. Due to this, the Plaintiff's voluntary dismissal of this matter is not appropriate and monetary sanctions should be considered. *See Maynard v. Nygren*, 372 F.3d 890, 893 (7th Cir. 2004). Plaintiff should not be permitted to repeatedly perpetuate a fraud on the Court and then conveniently dismiss its filed matters to avoid sanctions or the consequence of its false statements.

Finally, monetary sanctions and an award of attorney's fees are appropriate to deter other

plaintiffs and attorneys engaged in anti-counterfeiting enforcement from engaging in reckless behavior. "[C]ourts generally have an interest in both punishing a party's dishonesty and deterring others who might consider similar misconduct." *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015). An electronic docket search for trademark cases against "The Partnerships and Unincorporated Associations Identified on Schedule 'A'" reveals over 1,000 such cases have been filed in this District. Each of these cases feature the same general characteristics as the present lawsuit: a complaint filed under seal, the filing and granting of an *ex parte* motion for a TRO including an asset freeze, default judgement against the vast majority of defendants, voluntary dismissal of settled claims against many of the defendants, and ultimately seizure of frozen assets from the defaulting defendants.

Because courts in this district typically do not scrutinize these filings and a defendant does not appear, an unscrupulous party like Plaintiff here can use fraudulent filings in these trademark counterfeiting cases to operate an extortion scheme. If the Court does not sanction Plaintiff and its counsel to the full extent of its power in this case, it will send a message to other plaintiffs and attorneys that they are free to use the Northern District of Illinois as an instrument of extortion.

Here, the scale and frequency of Plaintiff's lawsuits note a pattern of litigation actions that fall egregiously short of the standards mandated by Rule 11. In this action, Plaintiff indiscriminately joined 250 unrelated defendants in just this matter, engaging in sealed proceedings to complicate the defense of the case. Plaintiff secured its overly broad injunction by deceiving the Court with spurious statements regarding the Defendants' alleged illicit activities. Plaintiff's initial argument, devoid of any factual substantiation or evidence, was that the Defendants, upon learning of the proceedings, would likely engage in the destruction of pertinent documentary evidence and relocate assets to foreign jurisdictions.

9

The dismissal of at least ten lawsuits and claims of US sellers being wrongfully restrained demonstrates a patent disregard for the due diligence obligations incumbent upon parties engaging in legal actions. This pattern not only exacerbates the punitive impact on those unjustly ensnared by Plaintiff's litigious overreach but also underscores the necessity for this Court's intervention to impose sanctions. This measure is imperative not only as a corrective to the immediate injury inflicted upon The Tee Expert but also as a deterrent against the perpetuation of such conduct in the future.

**WHEREFORE,** Defendant Tee Expert respectfully requests that this Court:

1. Use its inherent power to sanction the Plaintiff and its attorneys for its false representations to the Court to obtain jurisdiction and improperly seize assets;

2. Order an investigation into Plaintiff and its attorney's investigation in identifying defendants for lawsuits;

3. Make a finding of Exceptionalness under 15 U.S.C. § 1117(a);

4. Award Tee Expert its attorney fees and costs; and

5. Any other relief this Court deems just and equitable.

Respectfully Submitted,

*/s/ Benjamin C.R. Lockyer*
Benjamin C.R. Lockyer
Lockyer Law LLC
100 N. Riverside Plaza, Suite 2400
Chicago, Illinois 60606
ben@lockyerlaw.com
(773) 340-0011
***Attorney for Defendant Teeexpert***